**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **LACEY MANRIQUEZ,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 5:20-cv-00492-MAS |
| v. ) | |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| ) | |
| Defendant. ) | |

## OPINION & ORDER

Plaintiff Lacey Manriquez ("Manriquez") appeals the Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. [DE 1]. The Court addresses the parties' competing summary judgment motions. [DE 18, 24]. For the reasons discussed below, the Court finds that the Administrative Law Judge ("ALJ") applied the proper standards and that the ALJ's decision is supported by substantial evidence in the record. The Court therefore affirms the Commissioner's decision to deny Manriquez SSI benefits.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Manriquez protectively filed an SSI application on April 23, 2018, alleging disability beginning on April 27, 2011. [R. at 10]. She was 28 years of age at the time of the administrative hearing in this case. [R. at 37]. Plaintiff has a high school diploma and a Medication Technician certificate as well as some limited past work experience in retail and medical services. [R. at 37-38, 15]. Manriquez's SSI application was denied initially on July 13, 2018, and upon

1

reconsideration on October 15, 2018. [R. at 10]. Plaintiff filed a written request for a hearing on December 14, 2018. [*Id.*].

ALJ Jeffrey D. Morgan ("ALJ Morgan") conducted a hearing on February 4, 2020, in Lexington, Kentucky, with ALJ Morgan presiding remotely via videoconference from New Orleans, Louisiana. [*Id.*]. Non-attorney representative Patsy R. Hughes appeared on behalf of Plaintiff at the hearing. Impartial Vocational Expert ("VE") Deborah D. Robichaux ("Robichaux") also appeared at the hearing and testified. [*Id.*].

On March 30, 2020, ALJ Morgan issued an unfavorable decision finding that Manriquez had not been disabled under the Social Security Act since the date of her SSI application. [R. at 10-24]. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date and that she suffered from the following severe medically determinable impairments: Type 1 diabetes with hyperglycemia and neuropathy, pancreatitis secondary to hyperlipidemia, rheumatoid arthritis, degenerative disc disease of the right knee, and obesity. [R. at 12].[1] However, he found that no impairment or combination of impairments met the severity of one of the listed impairments in Subpart P, Appendix I. [R. at 13]. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

ALJ Morgan further found that Manriquez had the residual functional capacity ("RFC") to perform light work, with certain outlined postural and environmental adjustments. [R. at 14-22]. *See* 20 C.F.R. § 416.967(b). Though the ALJ found that Plaintiff could not perform her past work, he did find, based on Manriquez's age, education, work experience, and RFC that she could

---

[1] Though the record is unclear as to whether most medical providers believed Plaintiff to have type 1 or type 2 diabetes, the ALJ characterized the severe impairment as type 1, and neither party objects to this finding. The Court thus uses that characterization on substantial evidence review.

perform jobs that existed in significant numbers in the national economy. [R. at 22-23]. Such representative jobs included microfilm mounter, routing clerk, and marker, based on the Dictionary of Occupational Titles ("DOT"). *See* 20 C.F.R. §§ 416.969, 416.969a. ALJ Morgan found the VE's testimony consistent with the DOT. [R. at 23]. Accordingly, based on his review of the record, ALJ Morgan concluded that Plaintiff had not been disabled during the relevant period. *See* 20 C.F.R. § 416.920(g).

The Appeals Council ultimately denied review in October 2020. [R. at 1]. Manriquez subsequently initiated this action to challenge ALJ Morgan's decision, which became the final agency decision upon Appeals Council denial. [DE 1 (Complaint)]. Both Plaintiff and the Commissioner seek summary judgment. [DE 22 and 26, respectively]. The motions are ripe for review. For the reasons discussed below, the Court grants the Commissioner's motion and denies Manriquez's opposing motion.

## II.     LEGAL FRAMEWORK[2]

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

---

[2] SSI claims, as here, are governed by regulations essentially mirroring those applicable to disability insurance benefits (DIB) claims. *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court thus references both SSI and DIB case law interchangeably throughout this decision.

as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4). The ALJ proceeded through all five sequential steps in this case.

### III.   ANALYSIS

The overarching issue, as in most Social Security appeals, is whether ALJ Morgan's non-disability finding is supported by substantial evidence in the record. Specifically, Manriquez raises only one challenge to the ALJ's decision and determination. She argues that the ALJ improperly evaluated her subjective reports of symptoms, leaving the RFC and ultimate disability determination without substantial evidence support. [DE 22].[3] Manriquez particularly contends that ALJ Morgan unreasonably concluded that, when compliant with medication and treatment,

---

[3] Plaintiff does not assert any other challenges to the ALJ's decision or argue that it is procedurally improper or unsupported by substantial evidence for any other reason. She does not claim that any particular medical source was weighed improperly. The Court therefore focuses its review and analysis on the asserted subjective complaint evaluation argument.

5

her pain levels were managed in a manner consistent with the determined RFC, despite her subjective complaints to the contrary. Plaintiff further argues that ALJ Morgan found that her subjective complaints concerning diabetes and pancreatitis symptoms were not entirely consistent with the objective treatment evidence but failed to account for possible reasons for treatment noncompliance or ineffectiveness, in contravention of Social Security Ruling ("SSR") 16-3p.

On review of the full record, the Court finds that the ALJ applied the proper standards in evaluating Plaintiff's subjective symptoms and that the RFC finding and ultimate determination are supported by substantial evidence. Affirmance of the agency decision is thus required.

A. **THE ALJ PROPERLY EVALUATED PLAINTIFF'S SUBJECTIVE REPORTS OF SYMPTOMS.**

   1. **The ALJ Reasonably Assessed Plaintiff's Reports of Pain.**

Plaintiff first faults ALJ Morgan for finding her subjective complaints of disabling pain not entirely supported by or consistent with the record based in part on the ALJ's view that such symptoms were appropriately managed with treatment, but that Plaintiff was frequently noncompliant with the same. An ALJ must consider all "symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). First, the ALJ must determine whether there are medically determinable impairments that could reasonably be expected to produce the alleged symptoms. Next, if there are such impairments, the ALJ "will consider [the claimant's] statements about the intensity, persistence, and limiting effects of [the] symptoms" and "evaluate [the claimant's] statements in relation to the objective medical evidence and other evidence" in determining whether an individual is disabled. *Id.* § 416.929(c)(4). Factors relevant to evaluation of a claimant's reported pain and other symptoms include, among other things, the types and extent of treatment efforts pursued. *Id.* § 416.929(c)(3)(iv)-(vi).

6

In evaluating Plaintiff's subjective reports of symptoms, including pain, ALJ Morgan generally concluded that they could be reasonably expected to arise from Plaintiff's medically determinable impairments, but that the intensity, persistence, and limiting effects of such symptoms as reported were not entirely supported by or consistent with the record, including Plaintiff's degree of compliance with and pursuit of treatment. [R. at 15]. Manriquez disagrees with this assessment, arguing in part that the ALJ erred in so concluding because the objective medical evidence actually showed diminishing levels of pain medication returns during the relevant period, supporting the severity of the symptoms as endorsed by Plaintiff rather than undermining it. She further implies that, to the extent the ALJ found her noncompliant with pain treatment, she was noncompliant due to such diminishing returns and general plateauing of pain symptoms even with medication.[4]

---

[4] As it relates to the sources of Plaintiff's pain, the ALJ discussed several medically determinable impairments that could reasonably produce the various reported symptoms alone or in combination, including but not limited to her knee and lower back issues and pancreatitis. [R. at 15]. Despite Plaintiff's suggestion to the contrary [*see* DE 22-1 at Page ID # 1282], ALJ Morgan was free to consider the limiting effects of Manriquez's pain from all sources collectively in assessing the RFC at Step 4, notwithstanding the ALJ's finding at Step 2 that the back pain specifically was non-severe. *See* 20 C.F.R. §§ 416.920(e) and 416.945; SSR 96-8p. Manriquez further suggests disagreement with the non-severity finding relevant to back pain at Step 2, similarly arguing that the ALJ improperly found that her failure to pursue aggressive treatment or to abide by providers' recommendations undermined her subjective reports of symptoms. However, as discussed below and reading the decision as a whole, the ALJ applied the proper regulatory framework and reasonably found Plaintiff's reported pain only partially supported by and consistent with the treatment evidence in terms of the symptoms' intensity, persistence, and limiting effects, whether stemming from back or knee pain specifically or from a combination of that and other severe and non-severe determinable impairments. The rationale here rejecting Plaintiff's challenge to the ALJ's analysis thus pertains equally to all Steps, as her challenge rests on the ALJ's evaluation of her subjective reports of disabling pain and other symptoms, and the Court finds the ALJ's findings and decision both procedurally proper and substantially supported in that regard.

However, the ALJ's discussion of Plaintiff's reports of pain explicitly acknowledged the slight decrease in effectiveness of pain medication (Percocet) during the relevant period. [R. at 19 (noting that Plaintiff experienced 80% pain reduction for four hours in October 2018 and 75% for three hours in September 2019); *see also* R. at 963 (80% for four hours in October 2018), 958 (80% for three-four hours in December 2018), 950 (80% for two-three hours in May 2019), 946 (75% for two-three hours in July 2019), 942 (same in September 2019)]. Still, ALJ Morgan found overall that the medical evidence indicated improvement in Plaintiff's reported pain levels when compliant with medication. [R. at 19 (citing Exhibits 14F, 17F, 22F, and 15F)]. This conclusion does not skew and is not undermined by the marginal decrease in reported pain reduction between October 2018 and September 2019; rather, the evidence shows that Plaintiff experienced substantial reported pain reduction benefits from medication throughout the relevant period, even if such improvement was not constant or linear. These clinical notes demonstrating varying, but persisting, levels and durations of pain relief with medication are entirely consistent with ALJ Morgan's conclusion that the medication improved her symptoms overall.

ALJ Morgan further reasonably found based on the evidence that Plaintiff was not entirely compliant with provider recommendations and that her treatment record was not fully consistent with her reported disabling pain levels. [R. at 20, 22]. Although Plaintiff's pain management providers did adjust medications and dosages at times throughout her course of treatment, she did not consistently take all of her medications generally, attend follow-up appointments and specialist/referral visits, or otherwise follow treatment plans. [*See, e.g.*, R. at 982 (recommending referral to a GI specialist and alternative treatment options), 1069 (noting missing appointments and lack of endocrine follow-up), 1028 (failing to refill prescriptions and attend appointments), 1007 (counselling Plaintiff about the need for lifestyle changes in addition to medication to manage

pancreatitis and associated pain), 796 (noting no medication compliance for seven months), 812-13 (highlighting failure to take insulin "for many years")]. The ALJ thus reasonably found Plaintiff's reports of disabling pain only partially consistent with and supported by the evidentiary record, given Manriquez's inconsistent commitment to treatment. [R. at 20 (noting among other things that Plaintiff often failed to present for follow-up appointments and did not always take medications as prescribed)].

Nonetheless, the RFC ultimately included significant functional restrictions in part as a result of these reported symptoms, demonstrating that the ALJ credited their intensity, persistence, and limiting effects to some degree. [R. at 14 (limiting Plaintiff's light work RFC with additional conditions that she never climb ladders, etc., only occasionally climb stairs, and only occasionally stoop or kneel)]. "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) ("SSR 16-3p"), 2017 WL 5180304, at *9. "In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms," the ALJ may find the symptoms' intensity and persistence inconsistent with the evidence of record. *Id.*

Although Plaintiff did try a variety of pain medications and was under the care of a pain management clinic for periods of time, the record demonstrates gaps in care at other times and failures to attend follow-up appointments and to consistently take medications and engage in treatment. There is no evidence or suggestion that such gaps were the result of an inability to

9

receive or afford care or that the medication caused adverse side effects. [*See, e.g.*, R. at 19 (citing Exhibit 15F and noting that Plaintiff reported at least moderate pain relief and no side effects from pain medication in July 2018)]. Reading ALJ Morgan's decision as a whole, it is apparent that he thus found the intensity, persistence, and limiting effects of the reported pain somewhat consistent with and supported by her pain management treatment efforts, but also partially undermined by her failure to follow through with treatment plans and to complete medication regimens. [R. at 20 ("Overall, while the claimant had significant health problems, the majority of her issues stemmed from failure to follow through with treatment plans laid out by her healthcare providers.")].

Nor does Plaintiff cite evidence in support of her speculation that any such noncompliance was motivated by a plateauing of pain symptoms. In evaluating subjective symptoms, an ALJ must also "consider[] possible reasons [a claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9. One such reason may be that an individual's "symptoms have reached a plateau[,]" requiring only periodic treatment or refills without new or increasing treatment efforts. *Id.* But the record here does not evince consistently, steadily managed symptoms that have simply plateaued with continued rounds of the same treatment. Aside from the slightly diminishing effectiveness of medications in controlling pain symptoms as discussed, Plaintiff does not point to any evidence in the record that would indicate that her symptoms had reached a plateau and that pursuing further treatment would be fruitless. Rather, the medical evidence instead substantially supports a conclusion (as the ALJ here reached) that Plaintiff continued to experience some, if not perfect or total, pain relief with periodic treatment/management during the relevant period, but that her commitment to attending regular appointments, following medication regimens as prescribed, and pursuing non-medication forms of pain relief and treatment was inconsistent. The Court thus

rejects Plaintiff's contrary assertion that ALJ Morgan should have considered purported plateauing of her symptoms, as she provides no meaningful evidence in support of that theory, and ALJ Morgan's alternative conclusion is supported by substantial evidence in the record.

Ultimately, the restrictive light work RFC, with additional postural limitations, appropriately reflects the balance of evidence and incorporates the limiting effects of Plaintiff's stated symptoms to a degree commensurate with and substantially supported by the medical and other proof in the record.[5] The ALJ reasonably applied the correct regulatory standards, and his evaluation of Plaintiff's pain properly focused on the symptoms' consistency with the remainder of the evidence and did not improperly veer into credibility assessment. *Cf.* SSR 16-3p, 2017 WL 5180304, at *11 ("The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and . . . whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."). His conclusion that Plaintiff's subjective symptoms, including pain, were limiting but not disabling is supported by substantial evidence, and the discussion of these issues is sufficiently clear as a whole to permit appropriate review of the administrative result. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (requiring only

---

[5] The ALJ also cited some inconsistency between the severity of Plaintiff's reported symptoms and her degree of daily independence and activities. [R. at 22 ("Overall, the treatment records showed that, while the claimant had some health issues, she nonetheless had normal physical examinations and was able to walk without difficulty and handle her activities of daily living independently.")]. Manriquez does not specifically challenge the ALJ's consideration of the objective medical evidence or functioning reports in assessing her subjective symptoms. The Court limits its analysis accordingly, focusing on the ALJ's overarching lack-of-treatment rationale as here challenged.

"an accurate and logical bridge between the evidence and the result" when the decision is read in the aggregate); *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010) (observing that the ALJ's rationale need not come in "tidy packaging" and that courts must " read the ALJ's decision as a whole and with common sense").

### 2. The ALJ Properly Considered Offered Reasons for Diet Noncompliance.

Second, relatedly, Manriquez specifically challenges the ALJ's evaluation of her subjective reports of diabetes and other symptoms insofar as the ALJ found them inconsistent with her failure to follow recommended diets. [*See* DE 22-1 at Page ID # 1283]. Plaintiff argues that the ALJ neglected to consider that Plaintiff was not following diabetic diets because they allegedly exacerbated her pancreatitis symptoms. She also contends that, per the evidence, her providers did not necessarily take issue with her diet in terms of managing diabetic symptoms and there was negligible support for the ALJ's conclusion that her symptoms were inconsistent with the record.

The medical records refute the latter claim and support the ALJ's evaluation of the evidence. They confirm that Plaintiff was frequently counselled during the relevant period concerning compliance with a diabetic diet, glycemic management, and weight reduction. [R. at 19; *see, e.g.*, R. at 1006-08 (reflecting "extensive" counselling in February 2019 about diet, the need for glycemic control, necessary lifestyle adjustments, and possible bariatric surgery), 982 (noting in April 2019 that Plaintiff "attempted" a low-fat diet with some exceptions and recommending that she continue such diet and attempt weight loss), 973 (noting also in April 2019 that Plaintiff chose her diet "for her pancreas more than her diabetes" and that she was not interested in further nutritional counselling), 1176-78 (acknowledging tailoring of diet to pancreas

issues and recommending that Plaintiff maintain an appropriate diet as part of her treatment plan)].[6] These objective medical records support a finding that Plaintiff's providers perceived her diet noncompliance as exacerbating her diabetes symptoms, regardless of her reasons for eschewing the recommended diabetic diet.

There is thus substantial evidentiary support for ALJ Morgan's conclusion that the intensity, persistence, and limiting effects of Plaintiff's diabetes symptoms and related pain were not entirely consistent with her demonstrated noncompliance with diabetes treatment courses, particularly her failure to follow diet recommendations. That providers repeatedly discussed the need for Plaintiff to adjust her diet to control her diabetes evidences their view that her existing diet (largely characterized as high in carbohydrates and low in fat throughout the record) was inconsistent with management of her reported diabetic symptoms, even if Plaintiff reported that it aided with other issues. From this, the ALJ reasonably concluded that the limiting effects of Plaintiff's reported diabetes symptoms were somewhat (but not entirely) undermined by her noncompliance with provider recommendations. [R. at 20 (noting that Manriquez failed to regularly check glucose levels and to maintain an appropriate diet)].

---

[6] That the ALJ reviewed and recited evidence preceding the relevant period in this case does not run afoul of the regulations. Though the analysis must be limited to whether the evidence shows that Plaintiff was disabled during the relevant period only, review of preceding treatment (and compliance) evidence may be relevant to evaluating her symptoms as experienced during the relevant period. *See Cauthen v. Saul*, 827 F. App'x 444, 446 (5th Cir. 2020) (observing that, although the disability determination is limited to the relevant period, "pre-application medical records may be relevant to the existence of a disability during the relevant period" in some instances). Here, ALJ Morgan collected and clearly considered substantial evidence from within the relevant period as well [*see, e.g.*, R. at 19-22], and the earlier evidence simply illustrates a longitudinal picture of Plaintiff's compliance with courses of care over the years. Critically, it is clear from ALJ Morgan's discussion of the source opinions that he limited his disability analysis to the relevant period, despite finding some of the earlier records relevant to that inquiry.

Additionally, the ALJ expressly recognized that Plaintiff's failure to maintain a diabetic diet in part stemmed from her belief that "healthy" foods exacerbated her pancreatitis. [*See* R. at 19 (ALJ Morgan stating that Plaintiff "alleged that some healthy foods caused an increase in abdominal pain related to her chronic pancreatitis")]. However, this explanation, acknowledged by the ALJ, is not necessarily inconsistent with a finding that Plaintiff's failure to pursue additional nutritional counselling or to investigate the interaction between recommended diets for different impairments somewhat undermined her complaints of disabling symptoms. Though the medical records reflect Plaintiff's subjective reports that she was unable to follow a diabetic diet due to pancreatitis, she references no medical findings or opinions (and the Court locates none) endorsing from a medical perspective that there were no foods she could eat to manage both her diabetes and pancreatitis symptoms collectively. [*See, e.g.*, R. at 886 (observing in August 2018 that Plaintiff was "[a]pparently not able to maintain a diabetic diet due to her chronic pancreatitis which apparently flares when she eats non carbohydrates.")].[7]

Rather, notably, the evidence would indicate that Plaintiff instead declined further diet advice and did not pursue treatment to reconcile the consistent, repeated diet issues referenced by providers in a manner that worked for both impairments. Manriquez does not offer any reason that she did not or could not explore such intersectional treatment options and diet alternatives, such as prohibitive cost or lack of access to necessary services. *Cf.* SSR 16-3p, 2017 WL 5180304, at *9-10 (identifying possible explanations for noncompliance). And, to the extent she argues that she avoided the recommended diet because of "side effects" relating to her pancreatitis, the ALJ

---

[7] The record also supports the ALJ's conclusion that Plaintiff was not consistently compliant with glucose testing, insulin, and diabetes medications, further indicating substantial noncompliance with diabetes treatment. Manriquez does not specifically challenge the ALJ's findings in this regard.

reasonably nonetheless concluded that Manriquez's failure to investigate or pursue treatment for those purported diet consequences still somewhat undermined her subjective complaints.

The ALJ's decision clearly accounts for Plaintiff's claim that she was unable to follow diet recommendations but, as is clear from the whole of his analysis, found that such explanation did not entirely excuse her noncompliance with overall diabetes treatment or render it fully consistent with the disabling symptoms reported. He was required only to consider, not to fully accept, Plaintiff's explanation under the governing regulations and SSR 16-3p. And, as noted, the restrictive light work RFC with additional limitations is entirely consistent with ALJ Morgan's partial crediting of the intensity, persistence, and limiting effects of Plaintiff's symptoms insofar as they were found to be consistent with and supported by the record. ALJ Morgan thus applied the proper standards in evaluating Plaintiff's subjective symptoms, as he acknowledged but reasonably only partially credited the proffered explanation in assessing the impact of such noncompliance on symptom evaluation. Substantial evidence in the record supports this outcome.

## IV.   CONCLUSION

For these reasons, the Court rejects Plaintiff's challenges to ALJ Morgan's evaluation of her subjective reports of pain and other symptoms. ALJ Morgan's analysis in that regard applied the proper procedural standards, and his conclusions are supported by substantial evidence in the record. As Plaintiff lodges no other challenges to ALJ Morgan's findings or decision, procedurally or in terms of evidentiary support, the Court may not disturb the Commissioner's findings on substantial evidence review.

Critically, affirmance is required if there is substantial evidence in the record to support the ALJ's findings and conclusion, even if substantial evidence might also support the opposite conclusion, or if the Court itself might have reached a different result in the first instance. *Warner*,

375 F.3d at 393; *Mullen*, 800 F.2d at 545; *Longworth*, 402 F.3d at 595 (6th Cir. 2005). The substantial evidence standard is a low bar—more than a scintilla, but less than a preponderance—and the proof in support of ALJ Morgan's conclusions concerning Manriquez's subjective complaints and their impact on the ultimate RFC satisfies this standard. Accordingly, because the ALJ's decision applies the proper procedural standards per the regulations and because Plaintiff has not shown it to be unsupported by substantial evidence, the Court must affirm the agency determination below.

**IT IS THEREFORE ORDERED** that the Commissioner's motion for summary judgment [DE 26] is **GRANTED** and Plaintiff's competing motion [DE 22] is **DENIED**. A corresponding Judgment shall follow.

This the 9th day of June, 2022.



Signed By:
Matthew A. Stinnett   MAS
United States Magistrate Judge